Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 171539 Marvin Javier Ruiz-Escobar v. Jefferson B. Sessions. Thank you very much, Dan. You may proceed. Good morning, Your Honors. May it please the Court, my name is Susan Roses. I represent the petitioner Marvin Javier Ruiz-Escobar. Please speak up. Okay. And, Judge Lynch, if I may reserve two minutes for rebuttal? You may. Okay. Your Honors, the petitioner respectfully requests that this Court vacate and remand the decision of the Board of Immigration Appeals in this matter in accordance with its recent precedent in Aguilar-Escobar v. Sessions. In Aguilar-Escobar, this Court held that the Board of Immigration Appeals had failed to consider all of the relevant evidence on the record as a whole that the petitioner had placed before when it denied withholding of removal. In the incident case, there was significant evidence that was entirely ignored by the Board of Immigration Appeals and the immigration judge in both of their decisions. This was a particular social group based on family that the petitioner was putting forward, and the testimony of two of his family members, his sister, Zina Ruiz-Escobar, and his stepfather-slash-uncle, Camilo Ruiz-Man, was completely ignored. That testimony was, therefore, not considered at all in the Board of Immigration Appeals decision or in the immigration judge's decision. We have a large body of case law that says that neither the IJ nor the BIA have to mention every bit of evidence in the record, and the assertion that they ignored this evidence I'm not certain has support. In the Aguiar case, which I think maybe I wrote, was a far more extreme example of the lower the agencies not dealing with an issue. I'm not certain we can say that here. So what is the basis for your assertion that they ignored this evidence? Your Honor, it is correct, of course, in that not all evidence need be cataloged and considered by the Board of Immigration Appeals or by the immigration judge. However, it was an egregious error in this case where the petitioner's argument is that he is showing persecution based on the particular social group of his own family. And the highly relevant testimony of his sister, who was granted asylum for the same reasons, which she stated in her affidavit, which was not mentioned by either decision, and also his stepfather, his testimony at the hearing was not mentioned. And when this is a particular social group claim based on family, the petitioner fails to see how there could be even a sufficient review of the evidence presented when the evidence presented is that this is a family-based claim and the testimony of those family members is ignored. Counsel, did I understand you to say that the IG and the BIA ignored an affidavit from the sister? Yes, Your Honor. Okay. I just wanted to be sure. And that affidavit went into the record. There was no objection. Okay. And in Aguilar-Escoto, it was factually somewhat distinct in that the documentary evidence that was not considered was medical records. I believe there were police reports, but there were two affidavits as well in that documentary evidence. While this is, the affidavit is certainly documentary evidence, but testimony, credible testimony, is also evidence. And that evidence is so important that according to the federal regulations, a petitioner can meet their burden of proof in a withholding claim if they have sufficiently detailed credible testimony to that point. To be sure, having corroborating evidence is very helpful. However, in the instant case, the petitioner's credibility was only an issue with regards to his motive to having entered the United States. I don't understand why there was so much briefing on the issue of credibility when, in fact, both the IG and the BIA say that they're not relying on that. Your Honor, the petitioner would argue that that is a judgment, a statement made by the immigration judge and the Board of Immigration Appeals. And if the immigration judge in the first instance had backed up that assertion with evidence that he was not considering that negative credibility determination... Well, he says, I'm not going to consider it, and then he goes on to an analysis that doesn't consider it. And under our Zoo case, we would not consider it either. Your Honor, that credibility determination is not necessary in the first instance for this court to find for the petitioner that he's eligible for withholding of removal. And he was entitled to a presumption of credibility regarding the rest of his testimony, which is the vast majority of the testimony that he put forward on the record. And that credible testimony should have gone into the group of evidence, the amount of evidence that was submitted for him to meet his burden of proof. When you say it is omitted, I take it what you mean is they did not specifically discuss it. That is correct, Your Honor. Well, we do not know whether, we do not infer from that that they ignored the evidence. And since you do not argue that no fact finder could reasonably come to the conclusion they did based on the record, it seems to me that the only way to hold in your favor is to say that every bit of relevant evidence has got to receive express attention, or it will be regarded as having been ignored and therefore the subject of a remand. Is that what it boils down to? No, Your Honor. The petitioner is not arguing that every scintilla of evidence must be considered and cataloged in the court's decision. However, highly relevant and probative evidence such as the testimony of family members where their credibility is not called into question and the remaining testimony of the petitioner where the credibility was not called into question is crucial regarding whether or not the petitioner has met his burden of proof related to the nexus point. If it was, in fact, on account of his family members refusing to cooperate with the drug traffickers in Honduras who killed six of their relatives, to be sure, the death certificates which we submitted, as the judge noted, they do not contain a cause of death. However, that would be the purpose of an autopsy. The death certificates do corroborate the petitioner's testimony. I'm sorry. The IJ expressly discusses the death certificates. So you're off on a new topic now, right? Well, that was relevant, Your Honor, to the portion where Justice Souter had asked whether or not every scintilla of evidence need be considered. Well, what precisely are you saying they did not consider? Precisely, Your Honor, I'm saying they did not consider the testimony of Xenia Rosemary, who was granted asylum on the same grounds as the petitioner, that's not mentioned anywhere in the decision, the analysis portion. You say the testimony wasn't mentioned, but we're dealing with what facts that testimony comprises, and the IJ did state that he was not prepared to accept rumors within the family or family lore as recounted anecdotally in lieu of proof. And I don't know what these affidavits add to the mix other than what the IJ already said. Your Honor, if I may respond, that is true that the petitioner mentioned that they were rumors within the family. However, these are six deaths spanning over from 1994 to 2015, and the motives behind these deaths was explained by that testimony, as the petitioners understand it. And they cannot be expected, as this court has held and other courts have held, that the burden is not on the petitioner to show the definitive motive behind the persecution, but he must put forth some evidence on that matter. Thank you, counsel. We reserve two minutes. We'll hear from respondent now. May it please the court, the Attorney General is aware that there are places in the world where crime is more prevalent than it is here in the United States. As tragic and unfortunate as what happened to members of Petitioner's family, our immigration laws do not permit victims of crime or relatives of victims of crime to obtain withholding of removal to remain in the United States. In this instance, the agency determined that Petitioner's withholding of removal application was deficient on several dispositive elements, any one of which is sufficient to deny the petition at hand. For example, the agency determined that Petitioner did not suffer past persecution. We have no doubt that the incident at his apartment in 2011 was unsettling, and I know this sounds callous, but it was a garden variety death threat. Don't turn around or I'll kill you. There was nothing personal about it. It is not even clear that the assailants even knew who Petitioner was. They were looking for some other person. Petitioner did not know who that person was. No indication that the assailants cared that he was a member of the Ruiz family, and no indication that the assailants had any desire to harm Petitioner whatsoever. Also, there are serious nexus deficiencies here. Again, it's very tragic that Petitioner's family members were killed by gay members for various reasons. We do not dispute that, but grief is not a sufficient nexus. Jealousy is not a sufficient nexus. In this case, Petitioner's evidence indicated his father and his uncle were killed because they did not want to sell their land to the gay members. His cousin was killed apparently because she was dating a gang member and he took the breakup very poorly. Petitioner also testified his uncle was revealed to have killed their missing. We do not know why that was. Petitioner theorizes it was because of a vendetta against the Ruiz family, but there is no evidence supporting that assertion, and this court has held, as we say in our briefs, that Petitioner's subjective belief that his family was targeted was not sufficient to establish nexus. This case was not mentioned in our briefs, but it should have been about a month after the board decided Petitioner's case. They came out with a published decision called the matter of L-E-A-L-E-A-27-I-N-A-Decisions-40-2017. Would you be so good as to send us a Rule 28-J letter on that case within the next day or two? I would do that, yes, yes, I would do that. It was a very similar case to this. It was an alien who was seeking asylum, and like Petitioner, he claimed several of his family members had been harmed. But like here, they were harmed for various different reasons. And the board, even though the case came out of California, had a significant nexus discussion, and the board actually in fact discussed several precedents from this court. So even though it was governed by Ninth Circuit law, the board was essentially saying that the First Circuit's jurisprudence regarding nexus was indeed a correct statement of the law. There were also the unwilling and unable elements. The agency determined that the authorities were not notified of the mistreatment suffered by Petitioner's family, and more importantly, the actual crime lord was sentenced to 104 years in prison by the Honduran authorities. Also the issue of relocation. Petitioner here was able, after the 2011 incident, even assuming that the assailants were attempting to harm him on account of his family membership, and again, we don't think that's the case, he was able to move elsewhere in the same town and live without incident for a year and a half. And after his first removal, he lived for several months in a different town and was not harmed. That proves that location is feasible. And with respect to Petitioner's claim that the agency did not discuss evidence, as Judge Litt said, there's just no requirement that the agency list every single bit of evidence. Yes, but she does rely on our costa decision. That's true, yes. How would you distinguish that? I would say in this instance, the board and the immigration judge both discussed the dispositive, the necessary elements, the necessary pieces of evidence that were dispositive of Petitioner's claim. The board does refer to country conditions evidence. And as Judge Selye suggested, the written statement of Petitioner's sister, and as well as the testimony of Petitioner's uncle, was essentially cumulative of the merits of Petitioner's own claim. So we just don't believe that this is an instance where the agency's failure to discuss evidence, all evidence, was reversible error to the extent it was error at all. I do have a question where I think the respondent's position may be a bit exaggerated. Going to the credibility issue, you have asserted to this court that because the IJ and the BIA said essentially that the adverse credibility finding is beside the point, that we have no jurisdiction over that issue. Now, we have not held that we have no jurisdiction. We have merely held that where the BIA says as a matter of law that we are not going to pursue that, that this court then follows what the BIA says. All right. Okay. If I overstated, if the respondent overstated this court's position, we deeply apologize. Other circuits have held that if a particular holding was, if an issue was not part of the agency's holding, then it's a jurisdictional issue. If that overstates this court's position, I very much apologize. I would say that even if it's a matter of prudential, that under this court's precedent, this court should not, it's not necessary for this court to determine whether or not the adverse credibility determination regarding Petitioner's motive for entering the United States has any bearing on the merits of his withholding claim. Again, if I overstated this court's position, I very much apologize. Well, it's a serious matter for courts of appeals when the government asserts we have no jurisdiction over, if you will, an issue that was actually reached by the BIA. You can see the distinction I'm drawing. Sure. Yes, yes, yes, yes. I would also, in the government's defense, jurisdiction, the burden is on the Petitioner, in this case the party seeking to invoke the court's jurisdiction. You may not want to be making that argument. Okay, all right, yes, yes, okay, all right. Thank you, Judge. And again, due process arguments, Petitioner takes the position that the necessary prejudice regarding the article saying that the crime lawyer, Mr. Lucille Riviera, the admission of that, she argues that she was prejudiced by the admission of the actual article. I would submit that the actual inquiry was whether she was prejudiced, whether he was prejudiced by the actual irregularity, in this case the failure to produce an English translation. Otherwise, if Petitioner's position were correct, the doctrine of harmless error. Didn't the immigration judge say that the Petitioner, in fact, affirmed that the crime lawyer had been convicted and had received a long sentence? There was some evidence in that regard. Petitioner's actual testimony was that he had been arrested by the DEA. There's no indication that he had actually been convicted. But Petitioner and I think the stepfather did acknowledge that Mr. Riviera was indeed in the custody of authorities. But again, going back to the issue of prejudice, harmless error, if this court were to remand and we don't think you should, what would happen was the same evidence would come in with an English translation and Petitioner would not have any response to it, because we haven't heard one yet, and we would end up in the same position that we were to begin with. If we were to accept your argument on the nexus point and find that the board's decision of no statutorily protected ground was supportable, would we even have to reach the question of whether or not there was error in the testimony concerning the letter? Not at all. These are dispositive elements that Petitioner must meet, every single one of them, if the court were to agree. And the letter, as I understand it, doesn't really bear on the nexus ground. No. Okay. The letter, the Rule 28J letter, I'm sorry, what letter is the court referring to? No, no. The news article. The news article. No, no, no. Does that go to the argument or an able point? Which is also an element as well. Yes. Thank you. Thank you. Thank you, Your Honors. My brother counsel stated that these were garden variety death threats and that there was no indication that the men who broke into the Petitioner's apartment had any desire to harm him. Another legal error that was committed by the Board of Immigration Appeals and the IJ was the failure to take into account the context in which this had happened, which had been testified to at length during the hearing. Prior to this break-in, the Petitioner's stepfather had fled the country because of threats to his life. His mother had been killed the year before. His cousin had disappeared and both of his parents had been killed and two uncles had been killed. So this is a whole lot of evidence of very bad luck if the court doesn't take into account the testimony that existed about nexus. The court cannot, the Board of Immigration Appeals and the IJ, cannot expect the Petitioner to present, you know, signed authenticated documents that say, you know, we persecutors have persecuted the Petitioner on this basis and this is who we are. It's simply impossible for the Petitioner to do that and especially in an asylum case that's an extraordinary burden to place on the applicant. He clearly must present some evidence. I didn't think this was an asylum case. Withholding, in a withholding of removal case. I'm sorry, yes, so it is, and withholding of removal clearly does have a very high burden, but if the Petitioner does meet that burden, it is mandatory, it's not discretionary, it's mandatory, as this court held in Aguilar Escoto, that the Petitioner receive that relief under withholding of removal. And the Petitioner fails to see how not considering significant evidence of nexus in the case below shows that the court, you know, significantly considered, fairly considered the Petitioner's claims to a family-based social group and persecution on that account. Thank you, Your Honors. Thank you. The court will take a brief recess.